ELLIS, Judge.
In this suit the plaintiff is seeking a recovery of damages against defendant for alleged personal injuries and disability allegedly sustained as the result of assault and battery committed upon him by the defendant. After trial in the district court judgment was rendered in favor of plaintiff for $400 and an additional sum of $27 for medical expenses, and defendant appealed. Plaintiff has answered the appeal asking that the award be increased to the amount prayed for, viz., the sum of $10,000.
Both plaTntiff and defendant were employed by the Petrolane Company, who maintain an office in Bogalusa, Louisiana. The plaintiff was employed as a truck driver to deliver and distribute the Petrolane gas, and the defendant was employed as a salesman in the office. Defendant’s wife was employed as the office manager by the same company. It is plaintiff’s contention and testimony that the defendant on February 5, 1955 at about noon struck him with a piece of pipe upon his left forearm without provocation or justification. The defendant denies striking the plaintiff although it is clearly established that he did have the piece of pipe in his hand. The defendant contends and testifies that the plaintiff, in striking at him, hit the pipe. In otlier words, defendant contends that he was using the pipe to ward off or intercept the anticipated blows of the plaintiff.
It is well settled in Louisana that a plaintiff can recover civil damages in an action for assault and battery committed without legal excuse unless he provoked the difficulty by conduct calculated to arouse the resentment or fear of the defendant. However, the courts have found sufficient fault on the part of plaintiff to bar his recovery where he struck or attempted to strike the first blow. See: LSA-C.C. Art. 2315; Hopper v. Ross, D.C., 123 F.Supp. 371; Ogden v. Thomas, La.App.1949, 41 So.2d 717; Hartfield v. Thomas, La.App. 1950, 45 So.2d 216; Esnault v. Richard, La. App.1951, 53 So.2d 494; Ashley v. Baggett, La.App.1951, 53 So.2d 678; Smith v. Parker, La.App.1952, 59 So.2d 718; Gordon v. Pittman, La.App. 1952, 61 So.2d 609; Mecom v. Marshall, La.App., 64 So.2d 515; Brown v. Lambert, La.App.1954, 71 So.2d 410; Robertson v. Palmer, La.App.1954, 74 So.2d 408; Smith v. Bankston, La.App. 1954, 75 So.2d 880; Allison v. Ivy, La.App., 85 So.2d 332; Duncan v. Tanner, La.App., 85 So.2d 685; Carter v. Travelers Insurance Co., La.App., 83 So.2d 514; Bernard v. Baton Rouge Bus Co., La.App., 81 So.2d 456; Millet v. B & B Exterminating Co., La.App., 79 So.2d 409; Bacas v. Laswell, La.App., 22 So.2d 591; McCurdy v. City Cab Co., La.App., 32 So.2d 720; Manuel v. Ardoin, La.App., 16 So.2d 72; Aetna Casualty & Surety Co v. Cazebon, La.App., 11 So.2d 118; Sheppard v. Causey, La.App., 8 So.2d 86; Betz v. Teche Lines, La.App., 7 So.2d 656; Welch v. Van Valkenburgh, La.App., 189 So. 297; Landry v. Himel, La.App., 176 So. 627; Finkelstein v. Naihaus, La.App., 151 So. 686.
It is also well settled in Louisiana in the class of cases which we have under con *742 'sideration, as enunciated by our brethren of the Second Circuit in Smith v. Parker, supra, that [59 So.2d 720]:
“ * * * In the application of tort responsibility under Article 2315, LSA-C.C., which provides that one who is at fault for damage caused is under an obligation to repair it, a plaintiff, who by his or her conduct provokes a difficulty and is the aggressor, thereby forfeits the right of recovery for injuries received as a result thereof. In an effort to determine what conduct constitutes aggression and provocation sufficient to justify a battery in a number of cases it has been said:
“ ‘The use of mere words, no matter how calculated the words were to incite and irritate, do not present a defense, though they may serve in mitigation.’
“See Richardson v. Zuntz, 1874, 26 La. Ann. 313; Munday v. Landry, 1899, 51 La. Ann. 303, 25 So. 66; Bernard v. Kelley, 1907, 118 La. 132, 42 So. 723; Harvey v. Harvey, 1909, 124 La. 595, 50 So. 592; Bonneval v. American Coffee Company, 1910, 127 La. 57, 53 So. 426; Burnecke v. O’Neal, 1916, 139 La. 208, 71 So. 395; Oakes v. H. Weil Baking Company, 1932, 174 La. 770, 141 So. 456; LaFleur v. Dupre, 1924, 1 La.App. 230; Guillory v. Fontenot, 1925, 2 La.App. 189; Holmes v. Warren, 1930, 12 La.App. 399, 126 So. 259; Rainey v. Miano, 1931, 17 La.App. 137, 134 So. 757.
“Other decisions clarify the doctrine of ‘mere words’ and hold that a court or jury may properly find in favor of the defendant when the plaintiff is at fault in bringing on the conflict, although the fault may consist solely of verbal abuse. See Finkelstein v. Naihaus, La.App.1933, 151 So. 686; Walsh v. Schriner, La.App.1936, 168 So. 345; Landry v. Himel, La.App.1937, 176 So. 627, 629; Gross v. Great Atlantic & Pacific Tea Company, La.App.1946, 25 So.2d 837.
“In Walsh v. Schriner, supra (La.App. 1936, 168 So. 346), defendant struck plaintiff on the head with a flashlight after plaintiff had called the wife of defendant a ‘Goddam liar’. In deciding that such words were justification enough ■ for the battery committed, the court commented:
“ ‘In our opinion, the record clearly indicates that the plaintiff was the aggressor. The testimony preponderates to that effect. It may be that defendant was in an excitable state of mind when he entered plaintiff’s room and that he was determined to put him out, perhaps by force if necessary. Whatever his state of mind might have been, however there is no indication of belligerent or aggressive action until plaintiff applied the epithet to defendant’s wife. Perhaps the defendant believed that the raising of the plaintiff’s arm was an indication that plaintiff intended to strike him, and, if so, would be justified as a matter of self-defense in striking first, but we do not deem it essential to exonerate a defendant in an action for damages, that there should have been a belligerent gesture or a blow. It is sufficient, in our opinion, that the plaintiff should have been the aggressor and his aggression may be shown by threats, insults, or abuses, as well as by blows and hostile attitudes.’ ”
A mere reading of the record convinces us that there are errors, whether deliberate or unintentional, we express no opinion, in the testimony offered to substantiate plaintiff’s petition and contention and, also, in the testimony offered to substantiate the defendant’s defense or contention in this case. After a careful consideration of the testimony it is not difficult to arrive at the opinion that the defendant did strike the plaintiff on the forearm with the pipe. One of the eyewitnesses was out of the state and could not be located to testify, and the other eyewitness was still working for the Petrolane Company and practically refused to testify. At least that was the effect of his answers and definitely he was determined not to be accused of testifying in favor of one or the other, therefore, his *743 testimony is worthless. The record reveals that the defendant was an extremely nervous man and to such an extent that he was easily upset and had been under the treatment of a number of doctors and at times would have to leave his work because of his nervous condition. On Feb. 5, 1955 the plaintiff, after making an early morning delivery arrived at the office of his employer on Columbia Street in the City of Bogalusa, La., at about nine A.M., and upon learning that his pay check had not arrived from his employer he apparently became upset or at least he did quite a bit of talking to the other employees in what is termed the “warehouse”. This is a smaller room to the rear of the front office, both being in the same building and divided by partition. Evidently his language was not too nice at all times and he was told that he could be heard in the front office and to calm down and moderate his voice and language. According to the defendant he was warned several times and a Negro customer came in with a request for a delivery of gas to her home. It was a bad rainy day and evidently the plaintiff became more upset, and according to the defendant used abusive language to such an extent in his refusal of the request of the customer that the latter cried. Plaintiff denies this but is clear that there was some disagreement with regard to delivering the gas to this customer. The defendant states that shortly before noon, after having warned the plaintiff a number of times, that the plaintiff became so loud in his talk and swearing back in the warehouse which was as stated in the same building and had a door in the partition between it and the office, that he went back, opened the door and stated to the plaintiff, “We have customers out here and you wouldn’t want anybody swearing in front of your wife, would you? Keep your tone down if you want to swear, so then he started talking to these truck drivers.” According to defendant the plaintiff paid no attention but finally said, “You G-■ D — so and so, I will get you, I will fix you,” and started after him, at which time he picked up the piece of pipe and held it in front of himself and his wife got between them, and he “struck around her and bruised his hand on that piece of pipe and is now suing me for $10,000.00.”
Plaintiff on the other hand states that it is true that the defendant came back in the warehouse where he was assisting in unloading some merchandise and “told me to shut up, I was talking too loud, no swearing.” He denies, however, that he was cursing. Fie then testified about the actual event as follows: “I was talking to Paige about going to Covington, and I told him if he didn’t bring my check when he came back I was going to send him right back after it, and Mr. Perkins walked in the back and tole me I was either going to have to shut up or get out, and I said I am not talking to you or about you, and if you will go back and attend to the front I will help these boys unload these things and I will get going, and the next thing I knew, I think it was Paige, said ‘Look out’ and the next thing I knew he swung at me and said you son of bitch I will kill' you.” He stated that when the defendant swung at him he hit him on the left arm inflicting the injuries complained of.
It appears from the record that most of the plaintiff’s use of language was not directed pointedly to the defendant, but with regard to the cold rainy day and failure to send his check and in connection with his refusal to deliver gas.
The testimony of the defendant’s wife is corroborative of the defendant as to the general misbehavior and swearing of the plaintiff. But her testimony that her husband, defendant herein, did not hit the plaintiff with the pipe can be reconciled, for it is probable that he had already done SO' when she intervened and ran between the two men in order to stop the trouble. She testified that she heard the swearing and talking and her husband requesting the plaintiff to desist, and then heard the plaintiff say to the defendant, “You so and so, I will fix you this time,” and then she *744 ran out o-f the office door and when she got there the plaintiff was coming at her husband with his left arm raised, and was attempting to swing around her after she got between them to hit her husband.
Plaintiff left the office soon after the trouble and went to see Dr. L. L. Lancaster who testified that he examined him and found “He had a contusion on the dorsum of the left forearm which was swollen and quite red, and about one by three (1 x 3) inches long. He was complaining of excruciating pain, and if I remember right, the nurse had him to lie down on the examining table. He got kind of faint while I was waiting to x-ray him. We x-rayed him, and he had no fracture, but an ace or elastic bandage was placed on his arm. I gave him a prescription for pain capsules. That’s the last time I saw him.” This doctor was definitely of the opinion that the injury had not occurred the previous day, February 4, 1955, which the defendant contended was. most probable, as plaintiff had been in an automobile collision on that date in the city of New Orleans. However, there is no other testimony that anyone was injured in this collision, and the trial judge, although he did not favor us with written reasons, evidently believed that the defendant had struck the plaintiff with the pipe, on Feb. 5, 1955, as alleged and testified to by plaintiff.
We do not believe that the words and actions of the plaintiff justified the action taken by the defendant. If the plaintiff used as much abusive language as attributed to him by the defendant and for several hours, the defendant should have called in a peace officer. There is sufficient proof in the record, however, for the district court to have considered the actions of the plaintiff in mitigation of damages.
We are not impressed with the testimony of plaintiff as to the serious nature of his injuries as a result of the blow. His medical bill was only $27 and he only went to one doctor once. After seeing Dr. Lancaster he did not go to any other doctor but testifies that he treated his bruised arm at home with heat and rubbing. We do believe he suffered some, but evidently not enough to prompt him to see another doctor. His testimony is that he couldn’t afford the medical expense, however, we are not impressed wi.th this version, as we believe he could and would have afforded further treatment had he felt it necessary. His actions on the day of the injury were most aggravating and the district judge no doubt took this into account in mitigation.
We find no manifest error in the award under the facts and it is hereby affirmed.